Philsim Realty Corporation, Plaintiff, *v.* Fulton Trust Company of New York and Another, as Trustees under the Mortgage Made by Philsim Realty Corporation, Defendants.

Supreme Court, New York County, May 14, 1930.

*Siegeltuch, Butler & Kraft* [*Myron Butler* of counsel], for the plaintiff.

*Chadbourne, Stanchfield & Levy* [*Leonard P. Moore* of counsel], for the defendants.

Hammer, J. This is an action brought by plaintiff mortgagor against defendants as trustees under an indenture of first mortgage affecting the lease of certain premises described in the complaint to recover an alleged excess of payments deposited with the defendants pursuant to the terms of said indenture set forth in paragraph 4 of the complaint herein.

The only question involved is the construction of the language of the mortgage contained in article IV, section 1, which is fully set forth in the said paragraph of the complaint. By the language thereof the plaintiff as mortgagor was required to deposit with the defendant as corporate trustee on the execution of the indenture (July 1, 1927) " one-sixth of the semi-annual interest due upon

the bonds, plus an amount sufficient to pay one-sixth of the Federal Income Tax in respect of interest upon said bonds, not in excess of two per cent (2%) of such interest, and beginning July 31, 1927, and on the last day of each and every calendar month thereafter while any of the bonds secured thereby are outstanding, regardless of the time for presentation of any of said bonds or coupons * * * a sum equal to one-sixth of the total interest charges payable on the next ensuing semi-annual interest date on the outstanding bonds plus an amount sufficient to pay one-sixth of the Federal Income Tax in respect of interest upon said bonds, not in excess of two per cent (2%) of such interest. All such payments shall be applied by the Corporate Trustee to the payment of said coupons and said Federal Income Tax, payable at the source when due. Payments so made to the Corporate Trustee shall draw interest at the rate then allowed by the Corporate Trustee upon similar deposits, and the Corporate Trustee shall not incur any liability other than for the amounts actually deposited with and received by it to be paid to the holders of coupons as aforesaid, the interest allowed by the Corporate Trustee upon such payments to be paid to the Company. To the extent that any payments made to the Corporate Trustee under this section by the Company are not required for the purpose for which the same are made, such excess shall be repaid to the Company."

Under the provisions of article IV, section 1, plaintiff paid to the defendant seven interest and tax refund installments between July 1, 1927, and January 1, 1928, amounting in all to $41,649.33. The defendant paid out to bondholders as interest and tax refunds upon coupons on January 1, 1928, the sum of $35,700. Plaintiff claims that under article IV, section 1, the balance is excess and demands the return of $6,949.33 and interest on $1,000 from February 27, 1929, and on $5,949.83 from December 31, 1927.

In my opinion plaintiff has not correctly construed the language used. This clause, it appears, fixed a method of computation by which the parties arrived at the amount of each interest and Federal tax refund installment monthly to be paid by plaintiff to defendant. During the life of the indenture the method of computation was to be the same. From time to time, however, any decrease in the amount of principal and the accompanying or consequent redemption of outstanding bonds or reduction of Federal taxes (below two per cent of interest) would by using such method give a different and smaller result in the monthly amounts to be thereafter deposited as well as in any amounts then remaining in the hands of the trustee and available for the payments to be made by the trustee to the bondholders. On the payment of the next

ensuing semi-annual interest payment and tax refund to the bond-holders there would be an excess as a result of the two computatious, one based upon the original amount of principal and the other upon the reduced amount thereof. Article II provides a method by which at the election of the company, it may pay off and redeem before maturity on any interest date any or all of the bonds secured by the indenture. The company is required thereby " At least five days prior to the redemption to deposit with the Corporate Trustee the amount necessary to redeem all bonds called for redemption and to pay all proper and necessary charges and expenses of the Trustee * * *." In addition, article III provides another method of purchase and redemption of bonds. Thereunder the company is required to pay $4,625 to the corporate trustee on the first day of each month beginning July 1, 1929, up to May 1, 1947, and $5,625 on June 1, 1947, as a sinking fund for purchase, at prices not exceeding the redemption prices of article II, of outstanding bonds tendered for sale, and of such bonds as may be had in open market.

The parties to the indenture were free to make the kind of agreement they wished. They could have agreed to pay interest monthly in advance payable on the first day of each month, i. e., July first, August first and so on, or on any other date agreed upon. In the indenture they agreed that interest in advance was to be paid, the first installment upon the execution of the indenture and other installments on the last day of each following month. The advance payment appears to have been provided not alone for the protection of the corporate trustee but also for the better security and protection of the bondholders whose bonds are secured by the indenture.

The specific provision in the mortgage as to monthly interest payments controls as against the more general refund provision. It is an established doctrine of construction that specific provisions in an instrument control as against general provisions seemingly inconsistent. (*Stewart* v. *Arendt*, 16 Misc. 45; *American Sign Company* v. *Rundback*, 161 N. Y. Supp. 228.)

In *Stewart* v. *Arendt*, a contract for the sale of real estate provided that the purchase price should be a certain sum. A later provision in the contract provided for the payment of the purchase price in installments, the total of which exceeded the amount set forth in the earlier provision. The specific provision was held to control on the ground that " It is elementary that, where parties have definitely particularized the terms of the contract an apparently inconsistent general statement in the same regard must yield."

It seems clear that the purpose and intent of the last sentence of section 1 of article IV of the mortgage was only to cover the

situations to which I have referred and this general provision does not control over the specific provision for interest payments contained in the earlier portion of the clause.

It seems to me that at the time of the execution of the indenture by the use of language employed in said clause the parties expressed a scheme of installment payments of interest and taxes by the company (plaintiff) to the corporate trustee (defendant) which would be a protection and security to the latter as trustee in the payment of interest and refund of Federal taxes to bondholders as well as to the latter not for the first six months' period, as plaintiff apparently contends but, as defendant argues, for the entire life of the indenture and the debt it secured. Neither party claimed any ambiguity of language, nor did either party offer oral testimony. I see no ambiguity.

I construe article IV, section 1, to mean that at any time, and from time to time thereafter, when by the reduction of principal and accompanying or following redemption of bonds, or reduction of Federal taxes it can be determined that the interest on the principal secured by the indenture or refunds of Federal taxes for the next ensuing six months will require smaller monthly payments than any of the first seven installments paid by plaintiff to defendant, there will be an excess in the hands of defendant. In my opinion plaintiff will thereupon be entitled to the return from defendant of the excess thus determined, with interest in the event that same has not been previously paid thereon, at the rate fixed in said clause or article.

Verdict is directed for the defendant. Exception to plaintiff, thirty days' stay of execution, sixty days to make a case on appeal. Judgment may be entered accordingly.